**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4648
_____

ZHONG CHUN HUANG,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A088-527-776)
Immigration Judge: Honorable Eugene Pugliese

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 13, 2010

Before: RENDELL, FISHER and GARTH,  Circuit Judges

(Opinion Filed:  October 14, 2010)
_____

OPINION
_____

PER CURIAM

      Zhong Chun Huang petitions for review of the Board of Immigration Appeals'

("BIA") final order of removal.  We will deny the petition.

Huang is a citizen of China who entered the United States illegally in 2006. He applied for asylum, statutory withholding of removal and relief under the Convention Against Torture on the grounds of past and future mistreatment under China's coercive family planning policies and the penalties he faces for having left China illegally. The Government later charged him as removable for being present in the United States without having been admitted or paroled, see 8 U.S.C. § 1182(a)(6)(A)(i), which Huang concedes.

Huang testified at his hearing before the Immigration Judge ("IJ") and offered corroborating statements from various family members as well as background evidence. Huang testified that, after he and his wife had a child, she became pregnant again and went into hiding. In January 2006, birth control officials located her and took her for a forced abortion. Huang was present at the time and intervened. When he did, the officials punched him in the back, kicked his legs, tied his hands, and took him to a room at the birth control office, where they held him overnight. Huang testified that the beating left "bruises all over," but also that he did not seek medical treatment because, in part, it was "not that bad." (A.R. 80.) While Huang was detained, officials performed a forced abortion on his wife.

The IJ found Huang credible but denied relief. The IJ concluded that Huang himself did not suffer past persecution in the form of his wife's abortion, that his beating

and brief detention did not rise to the level of persecution, and that he presented no evidence that he faces persecution or torture if returned to China. The BIA conducted its own review of the evidence and reached essentially the same conclusions. Huang petitions for review.[1]

## II.

Huang raises three arguments on review. Each of them lacks merit. First, he argues that the BIA erred in concluding that he had not shown a well-founded fear of persecution if returned to China because of his violation of the family planning policies and because he left China illegally. Huang refers generally to his testimony, which the IJ found credible, but he does not cite any testimony or other evidence of record that compels a contrary conclusion, and our review of the record has located none. To the contrary, the BIA cited Huang's own testimony that Chinese officials have not been searching for him since he left. (BIA Dec. at 2) (citing N.T., Nov. 14, 2008, at 40; A.R. 96). That testimony constitutes substantial evidence supporting its conclusion. The BIA also concluded that Huang did not establish that he would be persecuted on return because he left China illegally, and Huang has not cited any evidence of record to the

---

[1]We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). Because the BIA issued its own decision, we review its decision rather than that of the IJ. See En Hui Huang v. Att'y Gen., — F.3d —, No. 09-2437, 2010 WL 3489543, at *4 (3d Cir. Sep. 8, 2010). We review factual determinations for substantial evidence, and may not disturb them unless "any reasonable fact-finder would be 'compelled to conclude otherwise[.]'" Id. (quoting 8 U.S.C. § 1252(b)(4)(B)). We review conclusions of law de novo, subject to established principles of deference on agency review. See id.

3

contrary. As the BIA explained, criminal prosecution for violation of generally applicable laws does not constitute persecution, at least in the absence of some further showing that Huang did not make in this case. See Fengchu Chang v. INS, 119 F.3d 1055, 1060 (3d Cir. 1997).

Second, Huang argues that he faces torture if returned to China because he left illegally, and that "[t]here is no indication the agency gave proper consideration to this issue." To the contrary, the BIA specifically discussed this issue and cited its earlier precedent regarding the penalties that returnees to China generally face for illegal departure. (BIA Dec. at 2) (citing In re J-W-S-, 24 I. & N. Dec. 185, 194-95 (BIA 2007)). And once again, Huang has not cited any evidence of record compelling the conclusion that he likely will be torture on return.

Finally, Huang argues that the BIA erred in concluding that he had not suffered past persecution in China. The BIA concluded, and we agree, that Huang's brief detention and the beating—for which he did not seek medical attention and which he described as "not that bad"—were not sufficiently extreme to rise to the level of persecution. See, e.g., Kibinda v. Att'y Gen., 477 F3d 113, 119-20 (3d Cir. 2007) (single detention and beating requiring stitches and leaving scar were not "severe enough to constitute persecution under our stringent standard"); Cai Luan Chen v. Ashcroft, 381 F.3d 221, 223, 234-35 (3d Cir. 2004) (beating by Chinese officials "with sticks" insufficiently severe where it was never claimed to have required medical attention).

Huang does not directly take issue with that conclusion. Instead, he argues that the BIA failed to consider "all" of the persecution he suffered because the beating took place while his wife was being taken for a force abortion. The BIA, however, clearly was aware of the context of the beating, and it properly explained that the persecution of one spouse under Chinese family planning policies no longer is deemed to be persecution of the other spouse. See Guang Lin-Zheng v. Att'y Gen., 557 F.3d 147, 156-57 (3d Cir. 2009). Huang was required to show that he was persecuted personally, which, as explained above, he did not do. We sympathize with Huang for having undergone what no doubt was a distressing event, but he has provided no basis to disturb the BIA's conclusion that it was not extreme enough to rise to the level of persecution.[2]

Accordingly, we will deny the petition for review.

---

[2]We note, as we did in Guang Lin-Zheng, that spouses of persons who have been persecuted under coercive family planning policies remain eligible for derivative asylum under 8 U.S.C. § 1158(b)(3)(A). See Guang Lin-Zheng, 557 F.3d at 157.